Hon. JAMES BARRETT,
Hon. ASAHEL PECK,
Hon. HOMER E. ROYCE,
Hon. TIMOTHY P. REDFIELD,
} Assistant Judges.

---

JONATHAN D. ABBOTT, ADMINISTRATOR OF THE ESTATE OF PETER WESSON, ALEXANDER HOLMES AND CAROLINE HOLMES HIS WIFE, AND J. H. REED AND MARTHA REED HIS WIFE *v.* DAVID W. CHOATE, ADMINISTRATOR OF THE ESTATE OF AARON WESSON, PETER WESSON, MOSES WESSON, ABIGAIL BOLTON, JOHN BOLTON, HANNAH MARTIN, ASAHEL MARTIN, PHEBE WESSON, THE AMERICAN MISSIONARY SOCIETY, AND THE AMERICAN BIBLE SOCIETY.

[IN CHANCERY.]

*Parol Evidence to vary Written Contract. Competency of Witness under ch. 36, § 24, of the Gen. Sts.*

Parol evidence cannot be received to enlarge or vary a written contract, especially one by deed.

Section 24, ch. 36, of the Gen. Sts., expressly excludes a party from testifying in his own behalf to a contract in issue and on trial, when the other party thereto, and with whom it was made, is dead, and his executor or administrator is a party to the suit.

APPEAL from the court of chancery. The answer was traversed and testimony taken ; and at the June term, 1874, Ross, Chancellor, the bill was dismissed, *pro forma*, by agreement. Appeal by the orators. The case sufficiently appears from the opinion.

*B. N. Davis*, for the orators.

*J. P. Lamson* and *Belden & Ide*, for the defendants.

The opinion of the court was delivered by

REDFIELD, J. The administrator and the heirs-at-law of Peter Wesson bring this bill against Aaron Wesson's estate, to reach property claimed to belong to said Peter's estate, for distribution among his heirs. Peter and Aaron were twin brothers, and during a long life, " had all things in common." Peter died in November, 1866, the owner of one half the joint accumulations of the two brothers. An arrangement was made between Aaron and the heirs at law of Peter, by which they, on the 22d of February, 1867, conveyed all their right and interest in Peter Wesson's estate, to said Aaron, in consideration of $2,000 paid to each of such heirs by said Aaron. The bill charges that the name of Phebe Griggs was affixed to the deed by her daughter, Caroline Holmes, without authority ; and that said Phebe was, at the time, so old and feeble in mind, that she was incapable of executing such contract. The bill further alleges, that all such heirs were induced to execute such deed, " by representing to each of them that if they would accept of $2,000 each, for the present, that said Aaron would hold the balance of each ones share in Peter's estate in trust for each of said heirs, till Aaron's decease, when the balance, together with Aaron's estate, should be divided between them." There is no allegation of *fraud*. The deed of acquittance conveys, *absolutely*, all the interest the grantors had in the estate of Peter Wesson. The orators must recover according to and for the causes alleged in the bill, if at all. The orators' solicitor seeks a decree solely on the ground that there remained an unexhausted balance of Peter's estate in the hands of Aaron after the distribution of $2,000 to each of the heirs, and that

Aaron agreed before and at the time the deed was executed, that if anything remained of Peter's estate after said distribution of $10,000 to his five heirs-at-law, such residue, at his decease, should be distributed to said heirs. The deed is executed under seal, acknowledged and recorded with due formality. The bill does not aim to set aside said deed for fraud or other cause, but seeks to engraft into said deed new and independent conditions and stipulations by *parol* evidence of an agreement or understanding of the parties, prior to or contemporaneous with the execution of the deed.

The rule of law is too long and uniformly established to require authority, that parol evidence cannot be received to enlarge or vary a written contract, especially by deed. Chancellor KENT states the law on this subject very clearly: "The rule is too well settled to be now disturbed, that when an agreement is reduced to writing all previous negotiations are resolved into the writing, as being the best evidence of the agreement. A contract cannot rest partly in writing and partly in parol; the writing is the highest evidence of the agreement" If it were not so, in the language of Lord LOUGHBOROUGH, in the case of *Haynes v. Hare*, "It would destroy all trust; it would destroy all security; and lay it open, unless the parties are completely bound by what they have signed and sealed." In the case of *Taylor v. Gilman*, 25 Vt. 411, ISHAM, J., states clearly the grounds, and the necessary averments in the bill for that purpose, that will enable a court of equity to interfere with written contracts. "There being no accident or mistake," the court say, "either in fact or law, the only ground upon which the testimony can be received to control the legal effect and operation of the covenants in the deed is, the *fraud* of the party in attempting to enforce them in violation of his agreement."

II. In regard to the claim of Martha Reed and her husband, the proof that a promise of further distribution in Peter's estate was made to them by Aaron Wesson or his agent, comes mainly if not entirely from them, who are orators, and parties to this alleged contract with Aaron Wesson. The statute expressly excludes their evidence. The language is too explicit to admit of question.

Gen. Sts. 327, § 24. "When the executor or administrator is a party, the other party shall not be permitted to testify in his own favor, unless the contract in issue was originally with a person who is living and competent to testify, except as to such acts and contracts as have been done or made since the probate of the will or .the appointment of the administrator." In the language of BARRETT, J., in *Ford's Exrs.* v. *Cheney*, 40 Vt. 153, "There is no province for construction, or for considerations of policy."

III. As to the claim of Caroline Holmes, who stands in .the place of her mother, Phœbe Griggs, there are considerations not common to the other orators. The deed was not signed by her own hand, but in her presence by her daughter Caroline, who claims and stands on the right of her mother, as her heir-at-law. She was old and feeble ; she had kept house for her brothers ; and Aaron stood to her in relations of special confidence. The whole evidence impresses the court that she had entire confidence in her brother Aaron, and did not understand that she authorized her signature to any instrument that barred her right, which had become vested in her brother Peter's estate.

The decree is, therefore, reversed, and cause remanded to the court of chancery, with direction that the bill be dismissed with costs—as to J. H. Reed and his wife, Martha Reed, with single cost; and that a decree be entered for the orators Alexander Holmes and Caroline Holmes, to recover the residue of said Phœbe Griggs's distributive share (being one fifth) in Peter Wesson's estate, after deducting the $2000 paid to said Phœbe at the time said deed was signed; that the matter be referred to a master to ascertain and report such residue and interest ; that neither party recover costs in this court ; and that the costs that have accrued in the court of chancery be apportioned as may seem equitable to that court.