Judge Mh.ls
delivered (he opinion.
This is an ejectment, in which the lessor of the plaintiff gave in evidence a patent issued to hima If and Andrew Ronald, now deceased, for the land in controversy. He ®ext read a copy of the will of said Ronald, proved an dre-corded in Virginia; Which, after sundry specific devises and provisions, has the following, to wit:
“I give and devise all the rest and residue of my estate, real and personal, wherever the same may he situated, to my worthy friends, Alexander Buchanan, John Graham, and William Wischam of the city of Richmond, in trust and in confidence, that they, or such of them as shall act, or survive, shall and will sell and dispose of the whole thereof, (not consisting of money) so as best calculated, in their opinion, to benefit my family, that is to say, in such parts or parcels, at such time or times, and upon such terms and conditions, as they shall judge proper, and after remitting to Walter IVlitcIteison, watch maker, Helmet row, Old street, London, the net proceeds which may arise from the sale of the messuage and tenement, formerly held by John Wilson, situate on, ai d running back from, the main street, in the city of Richmond, deducting thereout the amount of my account against him, the amount of which proceeds I hereby give and devise to said Walter Mitchelson, subject to the deduction aforesaid, shall and will pay and divide the proceeds of all such sales, and such moneys, as may appertain to my estate, from whatever source it may arise, to the following persons and in the following proportions:”
The testator then proceeds to name his wife and children, and direct their proportions and times of payment. At the close of the will, he inserts this provision: “Lastly, I nominate and appoint my aforesaid friends, Alexander Buchanan, John Graham, and William Wischam, to be executors to this my last will.”
This will was proved and recorded at a court held for Henrico county, Virginia, in July, 1799. William Wis-ebam, therein n^ynqxl as executor, lock letters testamentary at the same period, liberty being reserved to the remaining executors to join in the probate on tbe records of the court. At a court held in October, 1805, for the same county, John Graham, one of the executors, relinquished his right *381 of probale, anti the said Wischara, as well as the said Buc-hauan, (who had never administered) having departed this life, letters of administration, with the will annexed, were granted to Wiiliarh Fenwick, in due form.
Awdlgiv-certain^peiv sons therein named,tosell 'fnris ,lleir tt personal trust,and thot thesarne pf,r‘ namtdex’ors yet on their, ¿“JJ8 tor w¡íh Jie will annexed, has no power me^ust^the power dies with the trus-no^be^riTiv-ed.
A power (t0 executors to be executed '^°ele’
The lessor of the plaintiff then tendered in evidence a deed of conveyance from the said administrator with the will annexed, of the remaining moiety of the tract of land in contest, as vested by the patent in Andrew Ronald. The defendant’s counsel objected to the admission of this deed, as shewing no title, which objection was sustained by the court, and the deed rejected.
if it should be admitted that the administration with the will annexed, granted at the date this was, in Virginia, should authorise the administrator with the will annexed,. to sell lands in Kentucky, devised to be sold, (which is too broad an admission to be supported) it would not follow that he could execute the devise above recited. It is evident from the terms of the devise itself, that it is one in trust to the persons named individually, and not as executors. Such a trust could not be revived in the hands the administrator, after it had t spired. But put the case, that it was to i be persons named as executors, yet it was, in express terms, to be exercised in the manner best calculated "in their opinion'''1 to benefit the family; and the terms and conditions to be such as they should ''judge proper.” To “their judgment” and “their opinion,” the testator then submitted this power, and not to the opinion or judgment of any administrator which the law might thereafter appoint. It has been decided by this court, in the case of Wooldrige’s heirs vs. Watkins, 3 Bibb, 349, that one executor could not exercise an authority conferred upon him jointly with others, when such authority was only to be ex-treised subject to the discretion of the whole, and their sanction must be obtained before the act could be done. If that doctrine be correct, with regard to one, out of a plu rality of executors, it applies with still more force to'the case of an administrator with the will annexed, who has attempted to exercise an authority, specially confided to the judgment and discretion of executors by name, or such them as should act. We therefore conceive that the deed in question passed no title to the lessor of the plaintiff, and that it was properly rejected by the court below, when offered for the purpose of proving title.
The next question presented by the record, invokes the *382 proper mode of running' one line of^the survey of* the lessor of the plaintiff Its calls are, “to begin al a white oak, black gum and two beeches, lower corner to Walter E. Strong's 12 U00 acre survey, running with his line, and the course thereof S 12. E 970 poles, to au ash and beech.” Strong’s survey, which was first made, begins at the same place, and was executed, as deposed by its surveyor, by going around, and making the last corner and leaving the last line, which has since been adopted as one of the lines of' the lessor of the plaintiff, an open line. This last corner of Strong’s survey was well identified by the proof. The line of the survey of the plaintiff’s lessor, which calls to adjoin this, is longer than that of Strong’s, and of course the distance would place bis corner beyond the corner of Strong, and the common line, dividing the survey, Would not extend the whole distance of the line of Brown. This last line was also not run when the survey was executed, as is proved by the surveyor, and it is somewhat doubtful from the proof whether the corner of the plaintiff’s lessor, which extends beyond Strong’s corner, was ever made. Be this as it may, it is not found or shewn in this controversy, and the proof is clear that it was intended to be placed at a greater distance from the beginning than the corner of Strong, and that Strong’s corner, although calling for timber of (be same kind, was not adopted as the corner of the survey in question. When this common line is now run from the beginning, a direct line to Strong’s corner, the course varies from that called for both in the patents of Brown and Strung, and Strong’s corner is found standing a considerable distance within Brown’s survey, when the line is run by course and distance. It was contended by the lessor of the plaintiff, that as the line of his survey was left open, as well as that of Strong, it must be closed by running the true course till it intersected the next line extended on its course, and thus include the corner of Strong in the survey. The court rejected this mode of closing the surveys, and decided that the plaintiff must vary from his true course, and run the course which led him direct to Strong’s corner, and then continue the same course till his line was extended to the intersection with the next line of the survey. This decision was excepted to, and is notv assigned for error. We accord with the court below in this mode of closing the open line of the appellant’s survey. It is evident that Strong must come to has actual corner, aud as ⅜⅛⅞ *383 line between that and his beginning was left ope», be must ruo a direct line to that beginning, and his course must yield, according to repeated decisions of this court, and conform to that course, which will bring him back to the objects called for, and actually existing, at his beginning corner. This will place a considerable portion of tbe land contended for, within Strong’s patent; and it would be absurd to suppose, that the appellant could include land by construction, within bis patent, which was embraced by the adjoining patent, for which be had called, and by whose boundaries he has bounded himself. This must lead him to pass Strong’s coiner, and when he gets beyond it, he must continue the same course to find the lost corner at the intersection, and ought not to vary it, unless to reach objects called for and identified by proof This was the mode directed, as we conceive correctly, by the court below, there being no corner shewn which ought to vary his course. When the survey was thus closed, it was doubtful whether he could include any land which the tenant had in possession; and the weight of proof is in favor of the appellee on this point. We conceive, therefore, that the decision of tiie circuit court in closing the survey, and also in refusing a new trial on the grounds of tbe verdict being contrary to law and evidence, was correct.
If all four of the corners of a four sided survey be m .de.but l he ctofeitii^ line lef> open, the course must be so varied as ; o strike fee corners.
Hoggin for plaintiff.
The judgment must be affirmed with costs.