## RICHARD BUTLER, JR., *v.* CLARK GALE.

*Deed of the north half of a lot; its construction. Highway, an incumbrance upon the land it crosses. Admissibility of parol evidence. Relief at law.*

Where a lot is of a rectangular form and its sides correspond nearly with the cardinal points, a conveyance by deed of "the north half" of it, imports one-half of the lot in quantity and in rectangular form, bisecting its east and west lines.

Parol testimony is inadmisible, in an action at law, to show that by such a description a less quantity than one-half was intended. Nor can the deeds of the former owners of the lot, which are not referred to in the deed containing such a description, be resorted to, for such a purpose, in an action at law.

An open, public and long established highway, is an incumbrance upon the land which it

crosses; and unless excepted in a deed of such land, which contains the usual covenants against incumbrances, it will constitute a breach of that covenant.

And it cannot be shown by parol, in an action at law for the breach of the covenant, that the highway was not intended to be.indemnified against, and should have been excepted from the operation of the covenant.

If such was the fact, the covenantor can avail himself of it only by a resort to a court of equity.

COVENANT BROKEN.  The defendant, on the 1st day of January, 1852, deeded to the plaintiff a piece of land in Barre, which was described in the deed, which contained the usual covenants of seizin and against incumbrances, as " being one-half, that is, the "north half of the first division lot drawn to the original right of "Obadiah Noble."  The declaration counted upon a breach of the covenant of seizin as to the whole of the north half of the lot; and of the covenant against incumbrances, on account of the existence of a public highway across the same.  Trial by the court, September Term, 1854,—POLAND, J., presiding.

It appeared that the original lot, which was rectangular in its form, with its lines running nearly due north and south and east and west, was originally owned by John Gale, who deeded to Elisha Gale on the 16th of May, 1799, one-half of the lot, to be divided according to quantity and quality.  While the said John Gale and Elisha Gale owned said lot together, and about the year 1800, they attempted to divide the lot between them, but they were unable to agree upon a division, the north part of the lot being of superior quality to the south part.  They finally agreed upon some third persons to divide the lot, who made a division, and the line was run through by a surveyor,—and this division was acquiesced in by both parties, and, shortly after, a fence was built on the line, and the two farms have been thus divided ever since.  By this division, Elisha Gale received the northern part, but less than one-half of the whole lot, and the part thus apportioned to him was conveyed through successive grantees to the defendant.  Some of the deeds in the chain of title contained an accurate description of the bounds of the north part, which was divided to the said Elisha, and this was all that the defendant was seized of at the time of his deed to the plaintiff; at this time, there was across this part of the lot a public, open highway, being the main road through Barre to

Williamstown, which had been in existence, in the same place, for about sixty years.

The defendant proved that the plaintiff lived with the defendant's grantor, Sawin Gale, for several years on the same farm, and afterwards worked for the defendant, on the same farm, before he made the purchase of the defendant, and was well acquainted with the condition and boundaries of the farm.

The testimony respecting the division of the lot, and the knowledge of the plaintiff as to the defendant's title, and the boundaries and condition of the lot, was by parol, and was objected to by the plaintiff, but was admitted by the court; and the court, upon said testimony, and the foregoing facts, decided that the plaintiff was not entitled to recover, and rendered judgment for the defendant. Exceptions by the plaintiff.

*L. C. Wheelock* and *T. P. Redfield* for the plaintiff.

A deed should be construed according to the intention of the parties, as manifested by the entire instrument: *Bridge* v. *Wellington*, 1 Mass. 219; *Marshall* v. *Fisk*, 6 Mass. 24; *Wallis* v. *Wells*, 4 Mass. 135; *Pray* v. *Pierce*, 7 Mass. 381; *Litchfield* v. *Cadworth*, 15 Pick. 23; *Frost* v. *Spalding*, 19 Pick. 445; *Mills* v. *Catlin*, 22 Vt. 98.

If any doubtful words are used, they are to be construed most strongly against the grantor, he being supposed to have selected them: *Mills* v. *Catlin*, 22 Vt. 98; *Adams* v. *Frothingham*, 3 Mass. 352; *Worthington* v. *Hilger, et al.*, 4 Mass. 196; *Watson* v. *Boylston*, 5 Mass. 411.

This deed, by legal construction, conveys one entire half of the lot, divided in the centre by a line parallel with the north line: *Clark* v. *Fuller*, decided in Orleans county, not reported; *Beecher* v. *Parmele*, 9 Vt. 352; *Rich* v. *Elliott*, 10 Vt. 211; *Armstrong* v. *Boyd*, 3 Penn. 459; *Cornell* v. *Jackson*, 3 Cush. 506.

The parol evidence introduced by the defendant, was improperly received to contradict or vary the deed: *Rich* v. *Elliott*, 10 Vt. 211; *Vt. C. R. Co.* v. *Est. of Hills*, 23 Vt. 681; *Taylor* v. *Gilman*, 25 Vt. 411; *Child* v. *Weld*, 13 Pick. 121; *Lock* v. *Whiting*, 10 Pick. 279; *Hubbard* v. *Norton*, 10 Conn. 431; *Townsend* v. *Weld*, 8

Mass. 146; *Harlon* v. *Thomas*, 15 Pick. 66; *Cook* v. *Babcock*, 7 Cush. 526; *Cornell* v. *Jackson*, 3 Cush. 506.

Deeds introduced have no legal bearing. Analysis of their several descriptions, and quantity of land conveyed by each.

The defendant's want of title to, and possession of the south part of the north half of the lot, was a breach of this covenant: *Prescott* v. *Trueman*, 4 Mass. 627; *Sumner* v. *Williams*, 8 Mass. 162; *Cornell* v. *Jackson*, 3 Cush. 509; 4 Kent, 479.

A public highway is an incumbrance, for which the grantor is liable, on his covenant against incumbrances, even though the grantee know of its existence, or even agree to make no claim on the covenants on account of it: *Kellogg* v. *Ingersoll*, 2 Mass. 97; *Prescott* v. *Trueman*, 4 Mass. 630; *Harlan* v. *Thomas*, 15 Pick. 66; *Pritchard* v. *Atkinson*, 3 N. H. 335; *Haynes* v. *Stevens*, 11 N. H. 28; *Herrick* v. *Moore*, 1 App. 313; *Mitchell* v. *Warner*, 5 Conn. 497; *Hubbard* v. *Norton*, 10 Conn. 431; *Taylor* v. *Gilman*, 25 Vt. 411; 4 Kent, 479; 2 Green. Cruise, 463.

*Peck & Colby* for the defendant.

It is sufficiently obvious, from the language of the deed, and the attending circumstances, that the north half of the lot, as divided and occupied, was bargained for and conveyed. The language used in the deed is merely descriptive of the land conveyed, and does not amount to a warranty of any quantity: *Beach* v. *Stearns*, 1 Aik. 325; *Gilman* v. *Smith*, 12 Vt. 150; *White* v. *Miller*, 22 Vt. 380; Rawle on Cov. for Title, 358–9, and cases cited.

The existence of the highway is not an incumbrance within the true intent and meaning of the covenant. It has never been so regarded in this state, and the courts of Pennsylvania and New York do not hold it to be an incumbrance: *Whitlock* v. *Cook*, 15 Johns. 483; *Patterson* v. *Arthurs*, 9 Watts. 152.

The evidence showing that the plaintiff was acquainted with the condition and boundaries of the farm, was admissible in aid of the construction of the deed.

The opinion of the court was delivered by

REDFIELD, CH. J. This is an action upon the covenant against incumbrances, in a deed of land. The deed described the land as the north half of a certain lot, which lot appeared in evidence to

be in rectangular form, with its sides corresponding nearly with the cardinal points. The defendant, at the time of the conveyance, was in possession of the north part of the lot, but not of half the lot, in quantity, and this was known to the plaintiff, at the time, and before the conveyance. The defendant offered to prove that, by the agreement of the parties, the conveyance was only to extend to the land in his possession, at the time. The former conveyances of the land, defined it, as less than one-half of the lot, in quantity. There was also a highway across the lot, which had been open and travelled for many years. The declaration alleged the deficiency, in quantity of land, and the existence of the highway, as breaches of the covenant.

In regard to the extent of the land conveyed, we think no doubt can be entertained, unless we are to receive oral evidence to determine the intention of the parties. It is perfectly well settled in this state, that a deed of this kind, as applied to a lot in this form, does import one-half of the lot, in quantity, and in rectangular form, bisecting the east and west lines of the lot. This has been held to be the legal import of the terms used. *Rich* v. *Elliott*, 10 Vt. 212; *Beecher* v. *Parmele*, 9 Ib. 352; *Clark* v. *Fuller*, (not reported.) The term half is as definite as the whole, and it could scarcely be contended that, if by mistake, the deed had been of the whole lot, parol proof could be received to prove that but half was intended to be conveyed. If a term is equivocal or technical, parol proof may be resorted to, to define it, as we refer to dictionaries, or books of art or science. There are many terms in engineering, which are not altogether familiar to persons uninstructed, and where they occur in contracts or evidence, unless the parties agree in their import, proof of their true import must be resorted to. But it would not be competent to prove that a week, meant four days, or a rod, in engineering, ten feet, or that a solid yard of masonry consisted of but twenty solid feet. The proof offered, and which was received, was of this character, although not altogether so obviously so, as the illustrations given above. The deeds of former owners of the land, although of record, in the registry of deeds, not being referred to in this deed, can neither restrict or extend the import of the terms used.

The question in regard to the highway being a breach of the

covenants against all incumbrances, to a mere lawyer, would not seem to be one of much difficulty. But if one chose to confound the powers of the court of chancery, in restraining the party from claiming damages, for such a mere technical breach, which the parties must have understood, and could not really have intended to indemnify against, with the dry law of the case, and to appeal to the merely popular opinion, as to the extent of such a covenant, he might very readily convince some persons of no great perspicuity in their views, and very likely the great majority of men, of the very great absurdity of the law, without, at the same time, really showing very clearly, how a highway, or a railway, or a private right of way, was not, after all, an incumbrance upon the land. In this country, where our tenures are strictly allodial, we are very much accustomed to consider that, if another really possesses any rights in our land, it is so far forth an incumbrance upon our title. Whether it be small or large in amount, whether it be a mortgage or a right to flow a portion or all of the land, for a shorter or longer period during the year, or to draw water from a well or spring, or to water cattle at a brook, or to pass across the land on foot, or with teams, or to draw wood in winter only across the land, or to build and maintain a railway perpetually, or a highway, is certainly of no importance, in determining the mere technical question of incumbrance or no incumbrance. And it can make no difference whether this right is notorious or not. If the question of an incumbrance were to be determined by its notoriety, or what is the same thing, by its being known to the purchaser, it must, to preserve consistency, be extended to all incumbrances. And, in that view, the grantee could not recover upon this covenant, for paying a mortgage which he knew existed at the time of his purchase. But the contrary is perfectly well established. And in regard to these rights of way, if they existed only in a prior grant, and were not known to the grantee at the time of purchase, no one could claim that they did not constitute a breach of the covenant against incumbrances. And if the question whether a highway is an incumbrance upon land, is to be determined by the fact of its being open and notorious, it resolves itself into this, whether it was the intention of the parties to treat it as an incumbrance, or not. And the same rule should equally apply to a mortgage which

the purchaser agreed to pay. But, no lawyer will contend that, in such a case, if the grantor covenants against all incumbrances, he is not liable to refund the money paid upon the mortgage by the grantee. That is, he is so liable at law. This is the written contract of the parties, and it cannot be set right in a court of law, where the writing is the exclusive evidence of the contract. But in such a case, the party must resort to a court of equity, to restrain the other party from claiming indemnity against an incumbrance, which was intended to be excepted from the covenant. And the same is no doubt true of a covenant against incumbrances, so far as highways are concerned.

Ordinarily a court of equity would readily suppose the incumbrance of an existing highway, or railway, or any other known and notorious right, of a similar character, as a right to draw water from a spring, exercised by another at the time of the conveyance, could not have been intended to be indemnified against, and therefore should have been excepted from the operation of the covenant, and would, no doubt, so require the parties to treat the deed. But a court of law could not do this, without confounding all distinctions between the equity and law jurisdiction upon the subject. The case of *Patterson* v. *Arthurs*, 9 Watts, 152, relied upon in argument by defendant's counsel, seems to us to have been decided upon this ground, there being no chancery jurisdiction in that state to any extent. It is the common practice there, or was a few years since, to reform a deed in the course of a jury trial, in an action of ejectment, as the reports abundantly show. That is the only ground upon which this case can be maintained, unless we are prepared to determine questions of law according to the popular opinion, and the probable understanding of the parties, at the time of making contracts, which sounds sufficiently absurd to alarm even the most desperate reformers. The case of *Whitbeck* v. *Cook*, 15 John. 483, is not an action upon any covenant against incumbrances, but upon those of seizin and good right to convey, and the court held a highway no breach of the covenants sued upon. The argument of the judge is more plausible than sound, when he attempts to show that a highway is no incumbrance upon the land. It might, indeed, be a benefit to the land, and so might, in some sections of country, the right (and the exercise of it) to cut the wood and tim-

ber growing upon the land. But it could scarcely be claimed that such a right is no incumbrance. If a highway is no incumbrance, neither would it be if the whole land were covered by a highway, or a public common. The case of *Kellogg* v. *Ingersoll*, 2 Mass. 97, is directly in point, and sustained by the opinion of Chief Justice PARSONS, who never stumbled in the law, and is adopted in Connecticut, New Hampshire and Maine, as the cases read at the bar show, and we feel compelled to say that the question admits of no doubt, that a public highway across land is an incumbrance upon the title, the amount of which may be more or less, according to circumstances.

Judgment reversed, and case remanded.