# F. W. MITCHELL, ADMR. OF MIRANDA SMITH'S ESTATE,

v.

## JOSEPH PREPONT AND WIFE.

JANUARY TERM, 1896.

*Construction of deed. Circumstances which may be considered. Mixed possession not adverse.*

1. In construing a deed, the location and occupation of the premises, previous conveyances of the same, the relation of the parties under the instrument, may be considered upon the question of intent.

2. *Held*, that the words "with passage-way between said shoe-shop and my dwelling house and to the river," conveyed, under the circumstances of the case, the fee to the land covered by such passage-way.

3. Where the space between the two houses was used by the occupants of each for the purpose of passage, the storing of wood and other articles, the drying of clothes, etc., it was held to be a case of mixed possession and not sufficiently exclusive to divest the true owner of his title.

Ejectment. Plea, not guilty. Trial by court at the September term, 1895, Franklin county, MUNSON, J., presiding. Upon the facts found the court gave judgment for the plaintiff. The defendants except.

*Rustedt & Locklin* and *Farrington & Post* for the defendants.

The use of the demanded premises was a common occupation by those living in the buildings on either side, and from such a mixed use no title by adverse possession can arise. Washburn, Eas., 4th ed., pp. 57, 58; *Plimpton* v. *Converse*, 42 Vt. 712; *Eddy* v. *St. Mars.*, 53 Vt. 462; *Plimpton* v. *Converse*, 44 Vt. 158; *Cole* v. *Haynes*, 22 Vt. 588; *Swazey* v. *Brooks*, 34 Vt. 451.

*A. K. Brown* and *Hogan & Royce* for the plaintiff.

The way in which the parties occupied these premises should be considered upon the question of construction. *Jamaica Pond Aqueduct Co.* v. *Chandler et als.*, 9 Allen, 165; *Walker* v. *Pierce*, 38 Vt. 94.

The words "with passage-way" conveyed a right of way merely and not the fee. *Graves* v. *Amoskeag Mfg. Co.*, 44 N. H. 462; *Johnson* v. *Raynor*, 6 Gray, 110; *Leavitt* v. *Towle*, 8 N. H. 97; *Peck* v. *Smith*, 1 Conn. 103.

The deed from Smith to Carpenter was absolute in form, and since the defeasance was not of record, the case must stand as though the deed were absolute in fact. 1 Jones, Mort., ss. 253, 339, 548, 549; *Hart et al.* v. *Farmers' and Mechanics' Bank et als.*, 33 Vt. 252; *Connor* v. *Chase et als.*, 15 Vt. 764; *Tomlinson* v. *Ins. Co.*, 47 Me. 96, 232; *Smith* v. *Ins. Co.*, 50 Me. 96; *Bailey* v. *Myrick*, 50 Me. 171; *Gutherie* v. *Kahle*, 46 Pa. St. 331.

The passage-way was used with the homestead and as a part thereof, and it passed by a deed of the homestead. *Murphy* v. *Campbell*, 4 Pa. St. 480; *Mills* v. *Estate of Grant*, 36 Vt. 269; 2 Wait, Act. and Def., pp. 504, 505; *Hilton* v. *Gilman*, 17 Me. 263; 3 Washburn, Real Prop., 421, 422; *Eliot* v. *Carter*, 12 Pick. 436; *Doane* v. *Broad St. Assoc.*, 6 Mass. 332; *Ammidown* v. *Ball*, 8 Allen 293.

ROWELL, J. Before and on March 13, 1857, Silas P. Carpenter owned all the land referred to in the finding of facts. On that day he conveyed the easterly part thereof

to Gardner Davis. The deed described the land conveyed as the tannery as then owned and occupied by the grantor. It then proceeded to bound it, and made the westerly line thereof a straight line, commencing at a certain point in the southerly line of the highway, now River Street, in the village of Richford, and running thence on a certain course to the river at high-water mark; thence the boundary line ran up the river on the bank at high-water mark, etc. On September 25, 1857, Davis deeded two-thirds of said premises to Orville J. Smith, and on January 16, 1858, he deeded the other third to him.

On May 30, 1859, said Carpenter conveyed the westerly part of said land to said Smith. The deed commenced the boundary "in the southerly line of the highway at the northwesterly corner of the land now owned by said Smith on which his tannery stands as deeded" by the grantor to Gardner Davis, and made the easterly line of the land conveyed, the westerly line of the tannery property, and the southerly line thereof, the bank of the river at high-water mark. Thus Smith came to be the owner of all the land that Carpenter originally owned. The line between these two properties is not located by the case.

After Smith became sole owner of the easterly part, or the tannery property, as it is called, he built thereon a shoe-shop, which was afterwards converted into a tenement. There were doors in the basement thereof on the easterly side and in the rear, but none on the westerly side. After he built the shop, and in 1869, he built a dwelling-house on the westerly part, called the Union Block building. This building forms the easterly end of a solid line of buildings situate on the south side of River Street next east of Main Street, and has a veranda extending along its entire easterly end. Said building and the shoe-shop were built on the line of the street, and so located as to have between them a strip of land about twenty feet wide, which is the demanded prem-

ises.   The Union Block building is now held by the plain-
tiff as administrator of the estate of Miranda Smith, who was
the widow of the said Orville J. Smith, and the shoe-shop
building is the property of the defendants.   The alleged
ouster is the erection by the defendants of an addition to the
shoe-shop building that entirely fills the space originally
left between it and the Union Block building, except the
part covered by the veranda above described.   Partly in the
rear of said addition stands a building between which and
said addition there is a passage-way of a few feet in width.

On November 14, 1876, Orville J. Smith conveyed cer-
tain premises to said Carpenter by the following descrip-
tion :

" The tannery, shoe-shop, and buildings belonging there-
with, the water-power and privileges belonging with said
tannery, and all the land on which said buildings stand and
connected therewith, extending to the highway in front of
said shop, and to the road leading to William Corless'
dwelling-house, and to said Corless' land and to the river,
with passage-way between said shoe-shop and my dwelling-
house and to river."

A material question is whether the words, "with passage-
way," etc., conveyed the fee of the demanded premises or
only an easement therein.   This deed, though absolute in
form, was in fact a mortgage, as shown by the contempor-
aneous unrecorded agreement.between Carpenter of the one
part and Orville J. Smith and his son Cortis W. Smith of
the other part, providing for redemption by Orville J. and
his occupancy of the shoe-shop and Cortis W.'s occupancy
of the tannery, for a stipulated rent.

In 1877, Orville J. Smith was adjudged a bankrupt, and
H. E. Rustedt was appointed assignee of his estate; which
was duly assigned to him by the register in bankruptcy.   On
March 12, 1878, said Rustedt, assignee as aforesaid, con-
veyed to the said Miranda Smith, "that part of the block
known as the Union Block formerly owned and occupied by

Orville J. Smith as a homestead"; and a question much discussed at the bar is, whether this deed covers the demanded premises. If it does, and the deed of November 14, 1876, from Smith to Carpenter, does not, then the plaintiff has title by deed; otherwise it depends on adverse possession whether he has title or not. Smith did not redeem Carpenter's mortgage, and on the same day that Rustedt deeded to Mrs. Smith as aforesaid, he deeded to Carpenter all that was covered by said mortgage, and on the same day, Carpenter and Cortis W. Smith executed a writing, which was not recorded, whereby Carpenter agreed to convey to said Smith all of said premises in five years, on certain conditions. This time was subsequently extended two years, and on October 3, 1883, Carpenter conveyed the same to said Smith and his wife by a deed containing the following :

" The premises hereby intended to be conveyed consist of the tannery, shoe-shop, water-power and privilege belonging with said tannery, and the land on which said buildings stand and belonging therewith. "

On November 11, 1885, Cortis W. Smith having died, his widow conveyed the same premises to H. E. Powell, who sold the easterly portion thereof to Foster, and on November 29, 1892, the remainder to Shufelt, except the shoe-shop and the land with it lying within certain bounds, which he sold to the defendants on July 17, 1893, bounding it on the west by the place owned by Miranda Smith in her lifetime.

The shoe-shop was used by Orville J. Smith in connection with the tannery ; and before the erection of the Union Block building, all the land originally owned by Carpenter was also used in connection with it. As soon as the Union Block building was completed, said Smith moved into it, and continued to reside there until his death, about twelve years ago, and after that, his widow lived there till her death in 1892, since which time it has been occupied by tenants under the plaintiff.

The space between said building and the shoe-shop was some eight feet lower than the street, and a wall of that height, holding the embankment of the street, extended between the front corners of the two buildings. By reason of this difference in levels, the Union Block building had a basement above ground, which could not be reached from the street except by way of the main floor. There was no way of entering the basement directly except across the piece of land between the two buildings. This piece could be reached by teams coming from a street east of the shoe-shop building and passing in the rear of that building and between it and the tannery buildings, which stand in or near the southwesterly corner of the tannery property as conveyed by Carpenter to Davis. In thus coming to this piece with teams, the tannery property is crossed; and the piece could not be reached by teams in any other way.

From the commencement of said Smith's residence in the Union Block building until 1893, when the erection complained of was made, the occupants thereof continually made use of the space above described in connection with their occupancy of the building. They came upon it to deliver coal, potatoes, and other heavy articles to the basement as occasion required. They ordinarily had their wood thrown from the street over the wall above described upon this ground, and worked it up there preparatory to storing it in the basement. They had a clothes-line stretched there, and made regular use of it. During the time said Smith was carrying on the tannery, he boarded his workmen, and he and his workmen regularly crossed this piece in passing between the tannery and the house. While Cortis W. Smith was running the tannery he lived in the house with his father, and crossed this piece in passing between the tannery and the house. It does not appear that after the Union Block building was erected the space between it and the shoe-shop building was made use of in connection with the tannery in any other way than that above stated.

In view of all that appears, we think the fair construction of the deed of November 14, 1876, from Smith to Carpenter, is, that it conveyed the fee of the demanded premises and not an easement therein. Although Smith had been and then was using said strip of land in the manner stated, yet said deed was in fact a mortgage, so that he was not thereby depriving himself of its further use, only in the event of his failure to redeem, which most likely he did not then contemplate, as the property was worth much more than the debt. Nor does it appear that a mere way there would have been of any value to Carpenter, though he should become absolute owner under his mortgage, for the place was not accessible as a way from the street, and there was no occasion for passing from the rear of the shop to the westerly end of it, as the basement was constructed, and as to the tannery building, that was reached from the other side of the shop, and there is no suggestion of occasion for a way in the rear of it to the river, which the deed conveyed if a way was intended. It seems to have been the intention of the parties to carve out by that deed the tannery property substantially as it was carved out originally by the deed from Carpenter to Davis. Its language pretty clearly indicates this, when read in the light of the facts. It conveys the tannery, shoe-shop, and out buildings, and all the land on which said buildings stand and connected therewith. Now it seems reasonably certain that the demanded premises were included in the Davis deed, for it certainly included the tannery building, as does the deed in question, and that building as shown, by maps, photographs, and deeds in the case, especially by the deed from Powell to Shufelt, stands at least as far west as the front line of the veranda on the Union Block building. This deed makes the river and Mrs. Smith's line from the north bank thereof to the southeast corner of her house the western boundary of the land thereby conveyed; and makes the east line of her residence and the

continuation thereof to the tannery block, as it is therein called, the west line of the shoe-shop property as therefrom excepted. If by the east line of her residence the east line of the veranda is meant, it would seem that a continuation of that line towards the river would strike the Tannery block and not run west of it. Hence, it is safe to say that the Davis deed included the demanded premises. The deed in question, after stating in a general way what was conveyed, goes on to bound the premises. It bounds them on the north and on the east, extending them to the river. The southern boundary is not given, as it need not have been, for it was manifestly the river. The words, "with passage-way between said shoe-shop and my dwelling-house and to river," were intended to fix the western boundary. The passage-way did not extend to the river, but only between the buildings, and the words, "to river," were used for the purpose of carrying the purchase beyond the passage-way and to the river on the west as it was carried to the river on the east. We can give no other construction to that deed.

It follows, therefore, that the plaintiff has no title by deed, and the remaining question is, whether he has title by adverse possession. He cannot tack Smith's possession to that of Mrs. Smith, for it was not adverse but permissive, as we have seen. So he must rely on her possession alone. It does not appear that there was any use of the demanded premises other than above stated, until November, 1885, when Powell bought the tannery property. He claimed under his deed to own the land up to the Union Block building; but he made no assertion of his claim to any one, as nothing came to his knowledge to call for it. At times during his ownership the tenants of the shoe-shop building had their wood thrown over the wall onto that part of the demanded premises adjacent to their tenement, and stored it there.

One tenant had an old cart that he kept between the buildings "quite a while" under a "kind of shelter" that he made

for it close to the shoe-shop building. Another tenant who occupied about two months, had a wagon that he kept at times between the buildings close to the shoe-shop building. The tenants of the latter building hung their washings on lines between the buildings. It does not appear that anything was said by Mrs. Smith regarding this use of the yard; and in the case of the old cart and the washings of the same tenant, it appears that nothing was said. Once during Powell's ownership, a tenant of the tannery building put up a clothes-line between the two buildings, and Mrs. Smith told him to take it down, which he did; but it does not appear that this ever came to Powell's knowledge.

This makes a clear case of mixed possession during the ownership of Powell, whose deed covered the demanded premises, and who, by his tenants, occupied the same in the manner stated, claiming under his deed. Hence, Mrs. Smith's possession and the plaintiff's were not sufficiently exclusive for the requisite length of time, to ripen into title.

It is unnecessary to consider the objection made to Powell's competency to testify to Mrs. Smith's asking leave of him for one of her tenants to keep a wood-pile on the demanded premises and string a clothes-line there, for we take no note of the finding on that subject in determining the question of adverse possession.

*Judgment reversed and judgment for the defendants to recover their costs.*