ELISHA N. GOODSELL *v.* RUTLAND-CANADIAN RAILROAD CO., ET AL.

October Term, 1902.

Present: ROWELL, C. J., TYLER, START, WATSON and STAFFORD, JJ.

Opinion filed August 3, 1903.

*Lease—Description—Uncertainty—Possession—Parol evidence.*

When the description in a conveyance of land, read in the light of the situation of the parties, the subject matter, and the surrounding circumstances, fails to designate the tract intended to be conveyed, the conveyance is void.

A lease which describes the premises as "beginning eighty rods easterly of the southwest part of my farm, and extending northerly to the north line of land owned by me, eighty rods east of the lake shore," is void for uncertainty.

Possession of a part of a tract under such lease, by one claiming the whole, will not be extended by construction.

An inherently insufficient description in a conveyance cannot be aided by parol.

APPEAL IN CHANCERY.    Heard on the report of a special master, and defendant's exception thereto, at the August Term, 1902, Grand Isle County, *Munson,* Chancellor, after leave granted to file a supplemental bill.    Decree for the orator. The defendants appealed.

*Frederick H. Button* and *James K. Batchelder* for the defendants.

The description in the orator's lease is so indefinite that he has no title to the "East Quarry."    *Galwin* v. *Collins,* 128 Mass. 525; *Fullam* v. *Foster,* 68 Vt. 590; *Graves* v. *Mattison,* 67 Vt. 630; *Cummings* v. *Black,* 65 Vt. 76; *Clary* v. *McGlynn,* 46 Vt. 347; *Gilman* v. *Smith,* 12 Vt. 150; *Cutler* v. *Tufts,* 3 Pick. 272; *Woodward* v. *Nims,* 130 Mass. 70; *Lippett* v. *Kelley,* 46 Vt. 516.

Parol evidence was not admissible to aid the description. *Graves* v. *Mattison, supra; Railroad Co.* v. *Dyer,* 49 Vt. 74; *Rich* v. *Elliot,* 10 Vt. 210; *Jenks* v. *Morgan,* 6 Gray 448; *Allen* v. *Kingsbury,* 16 Pick. 235; *Harlow* v. *Thomas,* 15 Pick. 56.

*Alfred A. Hall* and *Jed P. Ladd* for the orator.

If necessary, the words "southwest part" used in the description in this instrument should be read "southwest point." *Cutting* v. *Stone,* 7 Vt. 475; *Williams* v. *Willard,* 23 Vt. 376; *Bundy* v. *Morgan,* 43 Vt. 46.

Parol evidence is admissible to aid the description. *Lowry v. Adams*, 22 Vt. 165; *Alger* v. *Canada*, 49 Vt. 109; *Mc-Keough's Est.* v. *McKeough*, 69 Vt. 44; *Wing* v. *Gray*, 36 Vt. 261; *Proctor* v. *Wiley*, 55 Vt. 244.

The orator was in possession of the land intended to be conveyed, and the defendants took their title with notice of, and subject to, his rights.

START, J.   The contention is over the right of the orator to compensation for stone taken by the defendants from the farm of E. B. Phelps, at a point that will herein be called the "East Quarry," and by them used in the construction of the Rutland-Canadian Railroad; and over the orator's right to an injunction restraining the defendants from continuing to take stone.   The orator's right, if he has any, is dependent upon whether effect can be given to a lease from Phelps to him, wherein it is attempted to grant a right to quarry stone by the use of the following language: "The exclusive right of quarrying and taking away stone from a piece or parcel of land situate as follows, to wit, in the town of South Hero, Vt., beginning eighty rods easterly of the southwest part of my (meaning said Phelps') farm, and extending northerly to the north line of land owned by me, eighty rods east of the lake shore."

From this description of the premises, it is evident that the lessor intended to grant a right to quarry stone from some particular part or parcel of his farm, and that the lessee expected that he was acquiring such right; but the description of the place from which a right to quarry stone was intended to be granted is so indefinite that the place the parties had in mind cannot be ascertained, and for this reason, the lease is inoperative as against the defendants.   There is nothing in the language used, when read in the light of the situation of

the parties, the subject-matter of the contract, and the sur-
rounding circumstances, that enables us to locate the place on
the farm from which a right to quarry stone was intended to
be granted. The language of the grant, when read by itself,
or in the light of the situation of the parties, the subject-
matter of the contract and surrounding circumstances, will as
well apply to a piece or parcel of the farm west of the East
Quarry as the point where the East Quarry is situated, and
apparently as well effectuate the purpose of the grant. The
description of the piece or parcel of land sought to be carved
out of the lessor's farm, and from which a right to quarry stone
was attempted to be granted, in effect, calls for a survey, be-
ginning at some undeterminable point in the south part of the
farm, and extending northerly to the north line of the farm,
eighty · rods ' from the lake. The place of beginning is
not on the southwest part of the farm, but eighty rods easterly
of that part of the farm, nor is the place of ending at the lake,
but eighty rods east of that point, and at the end of the line
extending northerly from the place of commencement to the
north line of the farm. The phrase "southwest part of my
farm," neither from its terms, nor when read in connection
with the location and boundaries of the farm and the sur-
rounding circumstances, fixes any point as being intended by
these words. The southwest part of the farm may properly
be described as an area of land extending half way from the
southwest corner of the farm to its north line and easterly
from the west line more than eighty rods, every foot of which
may be said to be in the southwest part of the farm. This
area is a part of the farm, but not a point on the farm. It
includes within it many points, but no one can tell from the
lease, the situation of the parties, the purpose of the grant
and the surrounding circumstances, what one point was in-

tended to be the point from which to measure eighty rods to find the place of beginning,—whether on the east, south, west, or within the area. It is found that, by commencing at a point eighty rods easterly of the southwest corner of the farm, or at a point eighty rods easterly of any point northerly, and within forty-five and one-half rods of the southwest corner of the farm, and running northerly to a point on the north line of the farm, eighty rods from the lake shore, would include the East Quarry. It is also found that each and every point of the west line of the East Quarry, as worked, is more than eighty rods from every point of that part or section of the lake shore, at low water mark, lying west of the East Quarry; and that the most westerly point of the farm is more than eighty rods from any point in the west line of the East Quarry, as worked.

The orator contends that the words "southwest part of my farm," should be read "southwest *point* of my farm"; but this cannot be done. There is a southwest part of the farm, consisting of a large area, corresponding with the language of the lease. When monuments exist corresponding with the sense of the terms used in the description of land, they ordinarily govern; and they cannot be omitted, and words of an entirely different meaning substituted. The parties have chosen the words found in the lease, which designate a large area of land as a monument from which to measure to find the point of commencement of the survey; and we cannot change this area to a single point or corner, when, as we have seen, the obvious purpose of the grant would be as well served by commencing at a point eighty rods easterly of any other part of the southwest part of the farm. A point of commencement eighty rods easterly of some places on the southwest part of the farm is east of the East Quarry; and from

other places is west of the East Quarry; and westerly of the last named point there are pieces or parcels of land from which stone can be obtained, of as good quality and as feasible to obtain and quarry as those in the East Quarry. Therefore, an inquiry as to the purpose of the grant does not show that the parties intended the words "southwest part" to be read "southwest point," nor does it disclose the intention of the parties respecting the point on the southwest part of the farm from which to measure to find the point of commencement, or aid us in locating the piece or parcel of land from which the lessor intended to grant a right to quarry stone, and from which the lessee understood he was acquiring such right. If we could assume that the place of beginning is eighty rods easterly of the southwest corner of the farm, then the location and extent of the piece or parcel of land mentioned in the lease would still be a matter of conjecture. Then we should have but one line or boundary, and that running from the south to the north side of the farm, at a point between the east and west boundaries of the farm, with pieces or parcels of land owned by the lessor on either side of the line, from which stone can be quarried to serve the obvious purpose of the grant, with nothing to show whether the parties intended it for an east or west boundary of the piece or parcel of land named in the lease, nor to show whether the right intended to be granted was to be exercised east or west of the line. If the words employed to describe a tract of land, when read in the light of the situation of the parties, the subject-matter, and the surrounding circumstances, fail to do so in such a manner as to show what tract was intended, the deed will be void for uncertainty of description. Thus, in *Bailey* v. *White,* 41 N. H. 337, it is held that, when a deed in fact describes no territory whatever, it cannot properly be construed to pass the title to

any particular tract of land, but must be regarded as wholly inoperative. So, in *Shackleford* v. *Bailey,* 35 Ill. 387, it is held that a deed of a certain number of acres out of a known tract of land, without specifying the part of the land out of which it is to be taken, is void for uncertainty. In *Mann* v. *Taylor,* 4 Jones' Law, 272, 69 Am. Dec. 750, it is held that a grant cannot be located when described as beginning at a stake, and the other corners are described as points at the end of course and distance, as such description is void on account of vagueness; and in *Hill* v. *Mowry,* 6 Gray 551, it is held that a deed which fixes the boundaries of a tract of land on the north and west, and describes it as bounded on the east by land which bounds it only in part, and as bounded on the south by land which is separated from it by the land of another person, is void for uncertainty.

It is insisted that the orator was in possession of the East Quarry. The finding upon this point is that the lease was recorded in the town clerk's office, January 13, 1899; and that shortly after the orator took possession, opened a quarry on the west side, built a dock and blacksmith shop, erected a derrick and entered into a contract with O'Brien, McHale & Co. to take stone from the west side. There is no finding that the orator ever took possession of the East Quarry, or did any work thereon. On the contrary, it is found that no stone were taken from the East Quarry except by defendants O'Brien & Sheehan. The orator having no paper title to the East Quarry, his possession of a quarry on the west side of the farm did not, by construction, extend to the East Quarry. When one takes a deed purporting to describe a tract of land, but which, through mistake, describes nothing, and under such deed takes possession claiming the whole tract, but cultivates a part only, he will hold adversely the part cultivated, and no

more.  *Jackson* v. *Woodruff,* 1 Cowen 276, 13 Am. Dec. 525. To warrant the application of the doctrine of constructive possession under a paper title by occupancy of a part of the premises, the writing relied on should include within its description the land not occupied.  *Langdon* v. *Templeton,* 66 Vt. 173, 28 Atl. 866; *Davenport* v. *Newton,* 71 Vt. 11, 42 Atl. 1087; *Rice* v. *Chase,* 74 Vt. 362, 52 Atl. 967.

The oral testimony respecting the understanding of the parties at the time the lease was executed, from which the master finds that the parties intended the lease to cover the East Quarry, was inadmissible; and this finding cannot be considered.    While deeds must, if possible, be so construed as to effectuate the intent of the parties, and in arriving at the intent expressed or implied in the language used, it is permissible to consider the situation of the parties, the subject-matter of the grant, and the circumstances connected with the transaction, and every part of the deed is to be considered with the help of such evidence, it is not permissible to aid or help out an inherently insufficient description by parol evidence of what the parties intended to include therein.    *Kinney* v. *Hooker,* 65 Vt. 333, 36 Am. St. Rep. 864; *Pingrey* v. *Watkins,* 17 Vt. 379; *Abbott* v. *Choate,* 47 Vt. 53; *Fletcher* v. *Clark and Burton,* 48 Vt. 211; *Smith* v. *Fitzgerald,* 59 Vt. 451; *Butler* v. *Gale,* 27 Vt. 739; *Grand Trunk R. R. Co.* v. *Dyer,* 49 Vt. 74.

*Decree reversed and cause remanded with mandate that the bill be dismissed.*