CLARENCE S. WHITTIER *v.* GEORGE W. PARMENTER AND MONTPELIER ICE COMPANY.

May Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed January 13, 1916.

*Waters and Water Courses—Riparian Owners—Boundaries— Conveyance by Implication—Appurtenances—Deed—Property Conveyed—Parol Evidence—Ambiguity—Omission of Call—General and Particular Description—Riparian Rights —Injunction.*

Though an easement in land may pass without express words as an incident to the grant, title to land cannot be so acquired, and so where a riparian owner on a non-navigable stream deeded land on which were ice houses, describing the land as beginning at a designated point on the bank of the stream, and ending at another point thereon, without a closing call, the conveyance did not pass title to the river bed as an appurtenance to the ice plant.

Where there is no ambiguity on the face of a deed, and there is no extrinsic evidence revealing a latent ambiguity, the intention of the parties must be ascertained from the deed itself, without resort to parol evidence.

A line that has been omitted in the description of land conveyed may be supplied by intendment, and where given boundaries terminate at a natural boundary, as a stream, highway, public common, or a well-established line of private boundary, the missing line is thus supplied by necessary intendment.

Where a deed conveying riparian lands is silent as to the boundary on the side of the river, but the description begins and ends on

the bank, such omission of a call does not make the deed ambiguous, so as to admit parol evidence.

Where a conveyance of riparian land particularly describes it, and the description concludes with the statement that the conveyance was meant "to convey three ice houses and the land enclosing the same," the particular description governs, and so the general description does not create an ambiguity as to whether the deed conveyed the bed of the river.

Parol evidence of intention is not received in aid of construction of a written instrument to make a new contract, but only when the language is capable of two or more constructions, either of which preserves the integrity of the instrument, whereupon by the aid of extrinsic facts the court may determine which interpretation should be given.

Where a conveyance of riparian land particularly described it, parol evidence was inadmissible to show that an added general description of the conveyance as "meaning to convey three ice houses and the land enclosing the same," was intended to pass title to the river bed, which was not included in the particular description of the land conveyed, for that would tend to contradict the proper construction of the deed, wherein the particular description must govern.

A finding based on evidence erroneously received will be rejected on review.

APPEAL IN CHANCERY. Heard on the pleadings and finding of facts by the Chancellor, at the September Term, 1914, Washington County, *Miles,* Chancellor. Decree dismissing the bill with costs. The plaintiff appealed. The opinion states the case.

*F. B. Thomas* and *H. G. Barber* for the plaintiff.

*Fred L. Laird* and *John W. Gordon* for the defendants.

TAYLOR, J. This is a bill in chancery involving the title to a portion of the bed of North Branch in the City of Montpelier. The land in dispute extends from a point about five rods north of the bridge in Cummings Street across said Branch up the stream to the northerly boundary of the plaintiff's land.

On January 6, 1870, the plaintiff's father, Robert H. Whittier, owned the land on both sides of the Branch north from

Cummings Street which included the land now owned by the plaintiff and that owned by the Montpelier Ice Co., as well as the whole of the river bed as far north as the defendant's land, and to the thread of the stream still farther north on the west side. On that day the said Robert H. conveyed to one Charles Lawrence the land now owned by the Ice Co. on the east side of the Branch by deed containing the following description: ''Beginning on the northeasterly side of North Branch on the road leading to the farm of Alexander Campbell and following the line of said road until it strikes the line of said Campbell's farm; thence turning and running southerly as the fence now runs to said Branch meaning to convey three ice houses and the land enclosing the same.'' The road referred to is now known as Cummings Street and leads easterly from the highway running from Montpelier to ,Worcester, known as Elm Street in the City of Montpelier. It crosses North Branch and some distance east of the Branch turns northerly and extends to and beyond the northerly boundary of defendant's land. Applied to the land the description starts from the easterly side of the Branch at its intersection with Cummings Street, runs easterly to the point where said street turns to the north, thence northerly to the line between the land conveyed and the so-called Campbell farm, and thence along said line to the North Branch. It will be noticed that the closing course is not described in the deed.

On April 15, 1876, said Whittier conveyed to Lawrence a strip of land five rods in width lying north of Cummings Street and extending from Elm Street to the Branch. Defendants have succeeded to the title to these two pieces of land which have been the property of one or both of them since April 26, 1884. The plaintiff is the owner of all of the land formerly owned by his father excepting what was conveyed by these two deeds. His land, so far as involved here, lies between Elm Street and North Branch and extends from the five rod strip conveyed in 1876 to a point some distance north of defendant's extreme northerly boundary.

It is alleged in the bill, in substance, that during each winter since 1910 the defendant Ice Co. has repeatedly trespassed upon the plaintiff's lands, has scraped snow from the ice that formed over the portion of the river in dispute onto his adjacent land, has cut, harvested, carried away and sold the ice that formed over the portion of the bed of the river claimed by the

plaintiff, has continued to trespass upon his lands during the ice-cutting season each winter and threatens to and plaintiff has reason to believe will continue so to trespass hereafter unless and until the plaintiff is granted the relief prayed for.   The bill further alleges that during the summer seasons since 1910 defendants have repeatedly trespassed upon the land claimed by him by removing gravel and other substance from the bed of the stream, whereby the banks of plaintiff's land adjoining the stream have been caused to wash and said adjoining land submitted to danger of being destroyed by the waters of said stream; and that plaintiff has reason to believe that defendants will continue so to remove gravel and other substance from the bed of the stream belonging to him unless restrained; that plaintiff brought suit in trespass on account of the trespasses alleged therein, but that since the bringing thereof the trespasses have been continued; that defendants claim title to the land in dispute which is a cloud upon plaintiff's title and a disturbing element to his peaceable occupancy of his lands.

In their answer defendants admit that in the year 1910 or 1911 plaintiff made claim that he owned to the thread of the stream where the defendant Ice Co. gathers its ice and that they paid no attention thereto and have never recognized any right of the plaintiff in said stream.   They further admit that unless restrained by order of court they will enter upon said stream and do all things necessary for the purpose of carrying on the ice business.   They set up in their answer a claim of ownership of the land in dispute and deny that they, or either of them, have ever trespassed upon or injured the plaintiff's land.

The chancellor finds that North Branch is a non-navigable stream; that defendants have from time to time dug and removed from the bed of the stream near the north line of plaintiff's land and immediately adjacent to the westerly bank of the stream large quantities of earth and gravel, sometimes making excavations to the depth of two or three feet; that the defendants claim the right to excavate and carry away earth and gravel from the bed of the stream as they have done in the past, and that they intend to exercise that right in the future.   Though requested, the chancellor has failed to find that such excavation has in the past increased, or will in the future be liable to increase, the dangers of the water's washing away the adjoining land.

This controversy arose in 1910 or 1911. The case shows that then if not before the defendants were claiming to own all of the river bed adjacent to their land and that portion of the river bed adjacent to the plaintiff's land farther north between the west bank and the thread of the stream. The case leaves us in doubt whether the plaintiff claimed at the trial before the chancellor beyond the thread of the stream. In his bill he alleges that his eastern boundary against the defendant's land, is the east bank of the Branch. It appears from the admission in defendant's answer that at the beginning of the controversy he was claiming only to the thread of the stream, and he concedes here that that bounds his land on the east. Whatever plaintiff's claim in this regard may have been at the trial, as the case is presented here, the land in dispute is that portion of the river bed between the thread of the stream and its west bank the entire distance across plaintiff's land.

Defendants' claim that Whittier's deed to Lawrence of Jan. 6, 1870, was a conveyance of the ice plant and extended to the west bank of the Branch, conveying all of the river bed owned by Whittier and used in connection with the ice plant. The chancellor finds that, in connection with the land and buildings conveyed, Whittier sold to Lawrence the apparatus and tools used in the ice business then being carried on in the buildings mentioned in the deed; that the source from which the ice was obtained was the river above the bridge in Cummings Street; and that the business at that point could not then have been profitably carried on without harvesting the ice which formed over the disputed portion of the river.

Defendants did not acquire title to the river bed as an appurtenance to the ice plant. Though an easement in land may pass without express words as an incident to the grant, title to land cannot be acquired in that way. *Miller* v. *Mann,* 55 Vt. 475; *Buck* v. *Squires,* 22 Vt. 484; *Cole* v. *Haynes,* 22 Vt. 588. It was said in the latter case: "Land does not pass as a mere appurtenance to other land." Defendants are not asserting an easement, but are claiming title to the land. They have been exercising and claim a right to exercise full privileges of ownership. On the case presented, no portion of the adjoining stream was conveyed beyond what the deed includes when reasonably construed. The facts found and admitted entitle the plaintiff to relief unless the deed covered the land in dispute.

Defendants claimed and the chancellor held that the language of the description was ambiguous. Parol evidence tending to show the intention of the parties and their construction of the deed was received under plaintiff's exception. Evidence of this character was received tending to show that Lawrence continued to carry on the ice business in the same place, harvesting his supply of ice from the whole width of the river adjacent to the land described in the deed and that Whittier made no complaint. To meet and explain defendants' evidence on that point plaintiff offered a writing bearing the same date as the deed, signed by Whittier and another, in which he gave Lawrence the privilege of cutting ice on the stream so long as he owned and carried on the business. Lawrence and Whittier were both dead at the time of the trial and the writing was shown to have been found among Lawrence's papers and to have been signed by Whittier. The offer was excluded and plaintiff excepted. It was apparently error to exclude the writing, in view of the issue that was being tried, but we do not find it necessary to examine the question.

On the evidence received under exception the chancellor found that the deed included the disputed portion of the river bed "with the right to cut ice thereon in the winter season"; and thereupon dismissed the bill. It cannot be claimed that the quoted finding was intended to limit the finding that the deed included the disputed portion of the river bed to a mere easement; for in that case, instead of dismissing the bill the Chancellor would have defined defendants' rights by decree; besides the issue raised by the answer was not of this character. Defendants were insisting below as here that the only reasonable construction of the deed, considering the testimony, was that it conveyed all of the river bed owned by the grantor and used in connection with the ice plant. The finding immediately follows a statement of defendants' claim that the deed extended to the western bank of the stream, which it was apparently intended to sustain.

Coming to the question of construction, we find no ambiguity on the face of the deed and there was no extrinsic evidence creating a latent ambiguity, in the absence of which the intention of the parties must be ascertained from the deed itself without resort to parol evidence of their intention. *Pingry* v. *Watkins,* 17 Vt. 379.

The fact that the description was silent as to the boundary on the west did not make the deed ambiguous. The rule is well established that a line which has been omitted in the description of land may be supplied by intendment. The obvious course is to apply the description to the land according to ascertained boundaries, abuttals and monuments on the sides given and see where the omitted side would come. If the boundaries given terminate on a natural boundary, as on a stream or body of water, or a highway or public common, or on a well established line of private boundary, the missing line will thus be supplied by necessary intendment upon a construction of the deed, and the instrument will be read as if it were so expressed. *Com.* v. *Roxbury,* 9 Gray, 451, 490; *Woodworth* v. *Nims,* 130 Mass. 70; *Ray* v. *Pease et al.* 95 Ga. 153, 22 S. E. 190; *Serrano* v. *Rawson,* 47 Cal. 52; *Kerr* v. *Delancy,* (Ky.) 91 So. 286; *Alexander* v. *Lively,* 5 T. B. Mon. 159, 17 Am. Dec. 50. The rule is stated thus in 2 Reeves on Real Property 1513: ''When the description of one side of the property is omitted it is presumptively supplied by a straight line running between the designated end of the two adjacent sides given, unless those ends stop at a stream, highway or other monument, in which case it follows the course of such monument.'' See also *St. Clair County* v. *Lovington,* 23 Wall. 46; *Woodman* v. *Spencer,* 54 N. H. 507; *Brown* v. *Hobson,* 3 Mar. 380, 13 Am. Dec. 187.

The description began and ended on the east shore of the branch. When applied to the land the description, so far as given, fits the premises. There is nothing in the language of the deed to indicate any other intention than that the natural monument from which the description starts and to which it runs was intended as the western boundary. See *Mitchell, Admr.* v. *Prepont et ux.,* 68 Vt. 613, 620, 35 Atl. 496. This was manifest from the deed itself and it was not necessary to look beyond it to ascertain the intention. The words "meaning to convey three ice houses and the land inclosing the same" do not create an ambiguity. It is nothing more than a general description of the land which had already been particularly described; and by a familiar rule of construction the particular description will govern. If the extrinsic evidence received on the theory that the general description was ambiguous would make the general comprehend more than the particular description, it would tend to

contradict the deed in its true construction and so would be inadmissible.  *Fletcher* v. *Clark et al.*, 48 Vt. 211, 216.

To adopt the defendants' contention would be to impart into the description no less than five additional courses, which is entirely out of harmony with the language used in the deed. This is not a proceeding to reform the writing and the utmost that could be done by way of construction would be to give the language employed such an interpretation as it was fairly capable of when read with a view to the intention of the parties gathered from the extraneous evidence. Parol evidence of intention is not received in aid of construction to make a new contract. It is permissible only when the language is capable of two or more constructions, either of which preserves the integrity of the written contract. Then by the aid of extrinsic facts the court may determine which interpretation should be given. Within these limits the writing is not altered nor varied, but its language speaks the intention of the parties. But to carry construction beyond that point and give a meaning to the language used of which it is not fairly capable, though found to accord with the intention of the parties, would be to set aside the writing and substitute another and different one. This is never permissible. *White et al.* v. *Amsden,* 67 Vt. 1, 30 Atl. 972; *Spencer* v. *Potter's Est.,* 85 Vt. 1, 80 Atl. 821; *Goodsell* v. *Rutland-Canadian R. R. Co.,* 75 Vt. 375, 56 Atl. 7; *Fullam & Adams* v. *Foster & Jaquith.* 68 Vt. 590, 35 Atl. 484; *Kinney* v. *Hooker,* 65 Vt. 333, 26 Atl. 690, 36 Am. St. Rep. 864; *Fletcher* v. *Clark et al.* 48 Vt. 211; *Grand Trunk Ry. Co.* v. *Dyer,* 49 Vt. 74; *Smith* v. *Fitzgerald,* 59 Vt. 451, 9 Atl. 604; *Butler* v. *Gale,* 27 Vt. 739; *Pingry* v. *Watkins,* 17 Vt. 379.

To the same effect is *Lowrey et al.* v. *Adams,* 22 Vt. 160, cited by defendants.

We are not called upon to decide whether the deed makes the east bank or the thread of the stream the defendants' western boundary, for though the bill is framed upon the theory that defendants' land stops at the east bank of the Branch, the plaintiff's concession disposes of that question. The finding as to what the deed included based on parol evidence erroneously received must be rejected. With that finding removed the plaintiff is entitled to a decree on the remaining facts.

In answer to a request for a finding of the value of the ice cut and carried away by the defendants "from the portion of

the river bed in dispute'' during the four seasons covered by the evidence, the chancellor has found that fifty dollars a year is the reasonable value of the right to prepare and cut ice ''on the disputed portion of the Branch.'' In view of the uncertainty concerning plaintiff's claim at the trial before the chancellor as to the location of the division line, we are unable to say that the finding of damages was confined to that part of the river bed which plaintiff now claims. This being so, the damages will have to be reassessed unless the parties stipulate as to that matter.

It appears from the transcript, which is before us, that defendants claimed on the trial the right to show, and offered evidence tending to show, title by adverse possession. Plaintiff objected to this evidence on the ground that the issue was not raised in the pleadings, and the chancellor ruled that the answer was defective in that regard and excluded the evidence. Defendants asked leave to amend, which was denied on the ground that certain evidence had been received under plaintiff's exception as the pleadings stood which might be error if the amendment were permitted. Defendants claimed that the answer was sufficient to raise the issue and excepted to the rulings. Though defendants have not brought their exceptions here, it is important that the rights of the parties be finally determined in this proceeding. Right to apply for leave to amend their answer under P. S. 1317 is not to be regarded as in any way restricted by this opinion.

*Decree reversed and cause remanded with mandate that the damages be ascertained, and that when determined decree be entered for the plaintiff in accordance with the view herein expressed, unless further proceedings in the court of chancery are there petitioned for and permitted in accordance with P. S. 1317. Let the plaintiff recover his costs.*